IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| THOMAS UTTECHT, SANJUANA UTTECHT, BENJAMIN UTTECHT, SILAS UTTECHT, ASHER UTTECHT, PHOEBE UTTECHT, LEAH UTTECHT, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 8:12CV347 |
| v. | ) ) | |
| JANET NAPOLITANO, Secretary Department of Homeland Security; SCOTT BANIECKE, Field Office Director, Immigration and Customs Enforcement; MARK FOXALL, Director, Department of Corrections, Douglas County, ERIC HOLDER, Attorney General of the United States, | ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) | |

This matter is before the Court on plaintiffs' motion for an injunction ordering the release of plaintiff Sanjuana Uttecht ("Uttecht") or in the alternative a bond hearing (Filing No. 3). Defendants challenge the Court's jurisdiction as well as the merits. The Court finds that Uttecht's detention is not so prolonged and foreseeably indefinite as to warrant an order of release. However, the Court finds that Uttecht's detention has continued for a substantial period without procedures adequate to ensure protection of her liberty interests, and that a bond hearing should be held to address the appropriateness of her release.

## I. Factual Background

Uttecht was brought into the United States at the age of six. At some point she was taken to Mexico where she was subject to serious abuse that was facilitated by her mental disabilities. She eventually returned to the United States illegally, married a U.S. citizen, and established a family and community ties in Norfolk, Nebraska. After a dispute with her mother-in-law, Uttecht was arrested and eventually turned over to Immigration and Customs Enforcement. On March 2, 2012, Uttecht was served with a notice that her previous removal order had been reinstated. An appeal of the reinstatement order is currently pending before the Eighth Circuit, but no stay of removal was granted in connection with those proceedings. However, Uttecht has also requested withholding of removal, which has delayed her actual deportation pending a final administrative order. On July 23, 2012, as part of an internal custody review process, Immigration and Customs Enforcement ("ICE") issued a finding that continued custody was warranted.

## II. Jurisdiction

This motion does not concern the underlying merits of Uttecht's pending request for withholding of removal. Rather, plaintiffs are challenging the continued detention of Uttecht while she awaits resolution of her request and the ultimate removal that might follow. District courts have jurisdiction to hear such challenges under 28 U.S.C. § 2241 -- the Courts' power to grant writs of habeas corpus. Despite the dwindling

jurisdiction of the district courts in immigration matters, the Supreme Court has explicitly recognized the continued jurisdiction of the courts where, as here, continued detention without due process raises constitutional concerns. *Demore v. Kim*, 538 U.S. 510, 517 (2003) (addressing 8 U.S.C. § 1226(c)); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001) (addressing 8 U.S.C. § 1231).

**III. Analysis**

A.

"Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Defendant asserts that Uttecht is being detained pursuant to 8 U.S.C. § 1231(a)(5). However, while § 1231(a)(5) pertains to the reinstatement of Uttecht's prior removal order, the language of that provision does not authorize her detention. The authority for Uttecht's detention must be derived from § 1231(a)(6) authorizing "removal period" and post "removal period" detention or § 1226(a) authorizing detention "pending a decision on whether the alien is to be removed." Authorization for detention shifts from § 1226(a) to § 1231(a)(5) at the critical moment when the "removal period" begins as determined by § 1231(a)(1)(B):

> The removal period begins on the latest of the following:

-3-

> (I) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined . . . the date the alien is released from detention or confinement.

Uttecht's progression through this round of removal proceedings has been somewhat unusual, making a determination of the start date unusually complicated. The record indicates that no stays have been issued and that Uttecht has not yet been released. Thus, the start date must hinge on the date on which Uttecht's order of removal is administratively final. Because Uttecht was previously removed to Mexico pursuant to a 1998 removal order, the Attorney General was able to simply "reinstate" that order without additional review of her status. 8 U.S.C. § 1231(a)(5). Typically, the date of reinstatement serves as the date of the final order of removal, starting the removal period pursuant to 8 U.S.C. 1231(a)(1)(A).[1]

However, Uttecht's removal is currently delayed while her request for withholding of removal proceeds through the administrative process. Thus, the reinstated order of removal

---

[1] *See, e.g.*, *Molina v. Holder*, 8:09CV283, 2010 WL 445918, *5-*6 (D. Neb. Jan. 26, 2010) (applying § 1231(a)(1)(B)(I) to trigger removal period by reinstatement order); *Rodriguez-Carbantes v. Chertoff*, C06-1517Z, 2007 WL 1268500 (W.D. Wash. May 1, 2007) ("The removal period for reinstated removal orders is triggered by the events listed in [§ 1231].").

-4-

does not constitute a final administrative order of removal in this case.[2]  Rather, the administrative order in her case will only be final when the Board of Immigration Appeals affirms the order or when the period in which such an appeal can be requested expires.  8 U.S.C. § 1101(a)(47)(B).  Since Uttecht's removal period has not yet started, the authority for her detention, for the time being, lies in § 1226(a).

### B.

The question for the Court is whether the procedural protections in place for Uttecht are adequate given the duration of her detainment.  While the Supreme Court has addressed the due process limitations of § 1231 post-removal-period detention in *Zadvydas* and the short period of § 1226(c) detention authorized for criminal aliens in *Demore*, it has not directly addressed § 1226(a) detention for aliens "pending a decision on whether the alien is to be removed."  The Ninth Circuit has addressed the provision at issue in the present case but the alien in that case had been detained for a much longer period.  *Casas-Castrillon v. Dept. of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008).

---

[2] *See Pierre v. Sabol*, 1:11-CV-2184, 2012 WL 1658293, *4 (M.D. Pa. May 11, 2012) *motion for relief from judgment denied*, 1:11-CV-2184, 2012 WL 2921794 (M.D. Pa. July 17, 2012) ("Petitioner still has an application for withholding of removal pending before the IJ, which means a decision has not yet been made on whether he will be removed from the United States. It also means the reinstated order of removal has not yet become administratively final because the IJ has yet to rule on his application."); *see also*, *Bah v. Cangemi*, 489 F.Supp.2d 905, 915-18 (D. Minn. 2007) (analyzing a similar circumstance in which the "removal order is no longer administratively final").

Here, Uttecht's eight-month, pre-removal-period detention clearly implicates concerns over primarily procedural due process. *Zadvydas*, 533 U.S. 690 (analyzing whether "adequate procedural protections" were in place to ensure that the government's stated reasons for continued detention were fairly weighed against the "individual's constitutionally protected interest in avoiding physical restraint"). Her detention is simply not so far beyond the *Demore* Court's timing factors to indicate the kind of major violation of substantive due process that would warrant an order of immediate release.[3]

The defendants contend that the internal review process provides sufficient process. Possibly because ICE understood Uttecht's detention to be pursuant to § 1231, Uttecht's file was reviewed -- ostensibly giving consideration to a number of factors weighing on her likelihood to be a flight risk or to commit crimes while on release. However, *Zadvydas* and *Casas-Castrillon* both questioned the adequacy of the administrative review process in protecting the rights of both post-removal-order and pre-removal-order detainees, especially as compared to a bond hearing before a neutral decision maker. *Zadvydas*, 533 U.S. at 692 ("[T]he sole procedural protections available to the alien are found in administrative proceedings, where the alien

---

[3] "The primary question for the Court [in *Demore*] was not whether detention . . . violated substantive due process because the alien's detention was indefinite [as it was under *Zadvydas*], but rather whether procedural due process required the government to make an individualized finding that detention was justified by a legitimate government interest." *Casas-Castrillon*, 535 F.3d at 949.

bears the burden of proving he is not dangerous, without . . . significant later judicial review."); *Casas-Castrillon*, 535 F.3d at 951 ("This review falls far short of the procedural protections afforded in ordinary bond hearings, where aliens may contest the necessity of their detention before an immigration judge and have an opportunity to appeal that determination to the BIA."); *see also*, *Diouf v. Napolitano*, 634 F.3d, 1081, 1091 (9th Cir. 2011). ("[A]t the 180-day juncture, the DHS regulations are appropriate but not alone sufficient to address the serious constitutional concerns raised by continued detention [under § 1231].").

Like the internal reviews in the above cases, the review of Uttecht's detention status lacked a personal interview, a genuine opportunity to contest the underlying facts on which the determination was made, a genuine opportunity to contribute to the record, and the right to an administrative appeal. Uttecht has not been provided a bond hearing.

Finally, the Court must consider the duration of the detention. In *Zadvydas*, the Court used the "period reasonably necessary to secure removal" as a benchmark for the constitutionality of the duration of post-removal-period detention. *Zadvydas*, 533 U.S. at 699. Recognizing that while Congress probably did not expect all removals to be effectuated within 90 days of the final order of removal, it likely believed that detention longer than six months is generally unwarranted. *Id.* at 701. Regardless, the liberty interest becomes more

substantial as the "period of . . . confinement grows." The Court took a similar tack in *Demore*, finding that pre-final-removal-order detention of six months was only a little more than average for aliens that appeal their removal orders and was less troublesome because the detainee requested a continuance that delayed the proceedings for a month. *Demore*, 538 U.S. at 530-31, n.15 ("[T]he detention at stake . . . lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal.").

Central to this analysis is the idea that detention must "bear a reasonable relation to the purpose for which the individual was committed." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alterations omitted). Part of that relationship is the time necessary to complete that purpose. In *Zadvydas*, it was clear that the purpose -- removal -- was "no longer practically attainable," diminishing the justification for prolonged detention. *Id.* In *Demore*, the administrative removal proceedings were delayed but ongoing and the detainee was being removed because of his criminal history. This presented a more robust flight risk rationale and a more pronounced public safety rationale for his six-month detention. In navigating these two guideposts to determine the standard under § 1226(a), the Ninth Circuit noted that § 1226(c) is a narrower grant of detention authority for the purpose of taking into custody and removing criminal aliens on an expedited basis. *Casis-Castrillon*, 535

-8-

F.3d at 951. The language of § 1226(a) allows detention of any alien "pending a decision on whether the alien is to be removed." However, the court still found that the alien's detention under § 1226(a) for seven years, "if unaccompanied by meaningful, individualized review, would clearly be a far longer period of detention than the 'brief' period of mandatory detention during administrative review that the Supreme Court approved in *Demore*." *Id.* at 949-50. The Court ordered a bond hearing.

Section 1226(a) may authorize a longer period of detention but only if procedural safeguards protect the detainee's liberty interests. *Zadvydas*, 533 U.S. at 688 (describing due process limitation as a limit of the authority granted by statute). In the present case, they do not. Uttecht has been detained without an individualized opportunity to genuinely participate in the determination of whether she is a danger to the community or a flight risk. Her detention has lasted nearly eight months, well beyond the six-month period found constitutional in *Demore*. The additional two months is significant because the Court in *Demore* anchored its finding of constitutionality to the average time of the administrative appeals process and the fact that the plaintiff in that case asked for a continuance that delayed the proceedings. Uttecht's detention has lasted three months longer than the average described in *Demore*. Further, though her colorable appeals and request for withholding have delayed a final administrative order, the record does not indicate that Uttecht has requested

-9-

any continuances or that she has acted in bad faith to delay the termination of the requisite administrative proceedings.  In addition, the appeals process could well extend these proceedings for several more months or even a year.  Finally, though *Casas-Castrillon* dealt with a much longer detention, it does not preclude finding a violation in much shorter periods.

Though the government has statutory authority to detain Uttecht under § 1226(a) until there is a final order of removal, given the length of her detention, she is entitled to more than discretionary review of her file.  Due process requires the opportunity to "contest before a neutral decision maker whether the government's purported interest is *actually* served by detention *in this case*."  *Casas-Castrillon,* 535 F.3d at 949.  A bond hearing weighing the factors set out by the Board of Immigration Appeals is suitable for this purpose.  *See In Re Guerra*, 24 I. & N. Dec. 37 (BIA 2006).  Accordingly,

IT IS ORDERED that on or before December 3, 2012, defendants shall provide a bond hearing to determine whether continued encroachment on the plaintiff's liberty interests is necessary in light of any credible government assertions that plaintiff Sanjuana Uttecht is a danger to the community or is a flight risk.

DATED this 1st day of November, 2012.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court